UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SONIA CHRISTINE RODRIGUEZ,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 1:21-cv-01671-CDB (SS)

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT;
AFFIRMING DECISION OF
COMMISSIONER OF SOCIAL SECURITY

(Docs. 15, 16)

Plaintiff Sonia Christine Rodriguez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental income under the Social Security Act.  (Doc. 1).  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.  (Docs. 15, 16).[1] Upon review of the Administrative Record ("AR") and the parties' briefs, the Court finds and rules as follows.

I.      **BACKGROUND**

   **A. Administrative Proceedings and ALJ's Decision**

   On November 16, 2018, Plaintiff filed a Title XVI application for supplemental income

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge and this action has been assigned to the undersigned for all purposes pursuant to 28 U.S.C. 636(c)(1). (Doc. 9).

1    benefits, alleging a period of disability beginning July 27, 2017.  (AR 291-298).  Plaintiff's

2    application was denied and, after reconsideration, was denied again.  (AR 181-184).  Plaintiff then

3    filed a request for a hearing before an Administrative Law Judge ("ALJ").  (AR 192-195).  On May

4    14, 2020, the assigned ALJ, Dennis Raterink, held a hearing; Plaintiff and her counsel attended, as

5    did vocational expert ("VE") Susan Rowe.  (AR 80-125).  The ALJ issued his decision on August

6    13, 2020, finding Plaintiff not disabled.  (AR 25-44).  On April 7, 2021, the Appeals Council denied

7    Plaintiff's request for review.  (AR 5-10).  Thereafter, Plaintiff filed the instant action.

8        In his decision, the ALJ used the five-step sequential evaluation process promulgated by

9    the Social Security Administration for determining whether an individual is disabled.  (AR 29-31;

10   citing 20 C.F.R. 416.920a).  At step one, the ALJ found that Plaintiff had not engaged in substantial

11   gainful activity since November 6, 2018, the application date.  At step two, the ALJ concluded that

12   Plaintiff had the following severe impairments: degenerative joint disease (DJD) of the bilateral

13   knees, degenerative disc disease (DDD) of the lumbar spine, obesity, depression, and anxiety.  The

14   ALJ also found that Plaintiff had the following non-severe impairments: cervical spondylosis,

15   asthma, hypertension, chronic kidney disease, diabetes mellitus (DM), and hyperlipidemia.  (AR

16   31).  At step three, after identifying these impairments, the ALJ found that Plaintiff did not have an

17   impairment, or any combination of impairments, that meets or medically equals the severity of one

18   of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 32).

19       The ALJ reached this determination by considering the four broad functional areas of

20   mental functioning listed in the "paragraph B" criteria.[2]  The ALJ found that Plaintiff had moderate

21   _____

22       [2] The "paragraph B criteria" evaluates mental impairments in the context of four broad areas of
     functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3)

23   concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § Pt. 404,
     Subpt. P, App. 1.  The severity of the limitation a claimant has in each of the four areas of functioning is

24   identified as either "no limitation," "mild," "moderate," "marked," or "extreme."  *Id*.  To satisfy the
     paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental

25   functioning, or a "marked" limitation in at least two of the areas of mental functioning.  *Id*.  An "extreme"
     limitation is the inability to function independently, appropriately, or effectively, and on a sustained

26   basis. *Id*.  A "marked" limitation is a seriously limited ability to function independently, appropriately, or
     effectively, and on a sustained basis.  *Id*.  A "moderate" degree of mental limitation means that functioning

27   in this area independently, appropriately, effectively, and on a sustained basis is "fair."  *Id*.  And a "mild"
     degree of mental limitation means that functioning in this area independently, appropriately, effectively, and

28   on a sustained basis is "slightly limited."  *Id*.; *see Carlos v. Comm'r of Soc. Sec.*, 1:21-cv-00517-SAB, 2023
     WL 1868870, at n.7 (E.D. Cal. Feb. 9, 2023).

1    limitations in all four functional areas.  (AR 32-33).

2        The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light

3    work as defined in 20 C.F.R. § 416.967(b).  (AR 34).  The ALJ determined that Plaintiff's

4    impairments could reasonably be expected to cause her alleged symptoms but the intensity,

5    persistence, and limiting effects of those symptoms were not entirely consistent with the evidence

6    in the record.  (AR 34-37).  The ALJ, citing to treatment notes, determined that the evidence of

7    record did not provide support for the existence of greater limitations above those assessed in the

8    RFC regarding Plaintiff' exertional and postural limitations, obesity, and mental limitations.  (AR

9    35-36).  The ALJ examined the opinions of healthcare practitioners in the record, finding

10   persuasive the opinions of state agency medical consultants A. Nasrabadi and W. Jackson (AR

11   36-37); unpersuasive the opinion of Plaintiff's own medical source, physician Evelyn Gomez-

12   Zelada (AR 37); and persuasive the opinions of state agency psychological consultants H. Amado

13   and J. Collado.  (AR 37).

14       At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.

15   (AR 37-38).  The ALJ concluded by discussing the VE's testimony and the Dictionary of

16   Occupational Titles ("DOT"), finding that Plaintiff would be able to perform the requirements of

17   jobs that exist in significant numbers in the national economy, namely mail sorter and office

18   helper.  (AR 38-39).

19       The ALJ found Plaintiff had not been under a disability from November 6, 2018, through

20   the date of his decision, August 13, 2020.  (AR 39).

21       **B.  Medical Record and Hearing Testimony**

22       The relevant hearing testimony and medical record were reviewed by the Court and will be

23   referenced below as necessary to this Court's decision.

24   **II.    STANDARD OF REVIEW**

25       A district court's review of a final decision of the Commissioner of Social Security is

26   governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

27   Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is

28   based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence"

means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely. Social Security Act § 205, 42 U.S.C. § 405(g). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the

4

Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational

1    factors such as the claimant's age, education, and past work experience.  *Id.*  If the claimant is

2    capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20

3    C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis

4    concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

5        The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*,

6    180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the

7    Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

8    work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran*

9    *v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

10   **III.    ISSUES AND ANALYSIS**

11       Plaintiff seeks judicial review of the Commissioner's final decision denying her application.

12   (Doc. 1).  Plaintiff raises the following issues:

13              1.    The ALJ erred by failing to reconcile conflict between the VE's testimony

14                    and the DOT (Doc. 15 at 8-10);

15              2.    The ALJ erred by failing to develop the record as to the impact of Plaintiff's

16                    bilateral knee arthritis on her ability to stand and walk during the workday

17                    (*id.* at 10-12); and

18              3.    The ALJ erred by failing to properly support the RFC with medical evidence

19                    (*id.* at 12-13).

20       **A. Whether the ALJ Erred by Failing to Reconcile Conflict Between the VE's**

21            **Testimony and the DOT**

22       "An ALJ may take administrative notice of any reliable job information, including

23   information provided by a VE."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  A "VE's

24   recognized expertise provides the necessary foundation for his or her testimony" and, accordingly,

25   "no additional foundation is required."  *Id.*  Because the Dictionary of Occupational Titles ("DOT")

26   is not comprehensive, "[i]ntroduction of evidence of the characteristics of specific jobs available in

27   the local area through the testimony of a [VE] is appropriate, even though the job traits may vary

28   from the way the job title is classified in the DOT."  *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th

Cir. 1995).  Indeed, a VE might be more knowledgeable about a particular job's requirements due to their experience in job placement or career counseling.  SSR 00-4p.  Therefore, a VE may be able to offer more specific information about jobs or occupations than provided in the DOT.  *Id.*  The ALJ permissibly may rely on VE testimony regarding "(1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy."  *Tackett*, 180 F.3d at 1101.

However, the ALJ cannot "rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the Dictionary of Occupational Titles."  *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007).  The ALJ has an affirmative duty to inquire as to whether there are potential conflicts between the VE's testimony and the DOT and direct an explanation from the VE regarding any such conflicts.  *See* SSR 00-4p; *see also Massachi*, 486 F.3d at 1152-53.  The ALJ must determine whether any such explanation is "reasonable and whether a basis exists for relying on the expert rather than the DOT."  *Massachi*, 486 F.3d at 1153.  In addition, neither the DOT nor the VE's evidence "trumps" the other when there is a conflict.  Instead, the ALJ must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE's testimony rather than the DOT information.  SSR 00-4p.

Even if a VE asserts that her testimony is consistent with the DOT, "[i]f a conflict is 'obvious or apparent,' this triggers the ALJ's obligation to inquire further … the focus of the conflict inquiry is the 'essential, integral, or expected' job requirements set forth in the DOT."  *Lashaw O. v. Comm'r of Soc. Sec.*, No. 24-CV-1461-W-SBC, 2025 WL 1482282, at *13 (S.D. Cal. May 23, 2025) (finding obvious conflict between DOT definition of housekeeper job, where common sense and real-world experience demonstrated majority of tasks required regular standing and walking, and RFC that plaintiff sit for five minutes every thirty minutes).

### *i.  Parties' Arguments*

Plaintiff asserts that the ALJ failed to identify conflicts between the VE's testimony and the DOT, "relative to both the mental health limitations and the physical restrictions" assessed. Plaintiff states that the job of mail sorter, set forth by the VE in response to the hypothetical that

1    the ALJ adopted as the RFC, exceeds the assessed mental RFC limiting Plaintiff to "simple

2    instructions" as it requires a Reasoning Level of three, which involves problems with "several

3    variables" and the ability to understand and carry out "detailed" instructions.  (Doc. 15 at 9).

4    Plaintiff further asserts both jobs provided by the VE, mail sorter and office helper, exceed the

5    assessed physical RFC.  Plaintiff states that the position of mail sorter requires "handling and

6    moving objects: using one's own hands and arms in handling, installing, forming, positioning and

7    moving materials, or in manipulating things, including the use of key boards."  *Id.* at 10 (citing

8    DOT 209.687-026).

9         Plaintiff similarly states that the position of office helper requires "performing general

10   physical activities: that require moving one's whole body, such as climbing, lifting, balancing

11   walking, stooping. . . often also require considerable use of the arms and legs, such as in the physical

12   handling of materials."  *Id.* (citing DOT 239.567-010).  Plaintiff argues that, as she requires use of

13   a cane for ambulation and balance, her right hand is occupied and her ability to utilize it is, thus,

14   "compromised by 50 percent, rendering her unable to sustain such work."  *Id.*

15        While conceding that the occupation of mail sorter implicates Reasoning Level 3 (Doc. 16

16   at 5), Defendant argues that the VE's testimony constituted substantial evidence supporting the

17   ALJ's findings, as nothing in the RFC precludes Plaintiff from performing the listed tasks of the

18   mail sorter position.  Defendant also asserts any such error would be harmless because the VE

19   identified other work that Plaintiff could perform, namely that of office helper, which exists in

20   significant numbers in the national economy.  *Id.* at 5-6.

21        Defendant asserts that, regarding Plaintiff's arguments as to physical limitations for the

22   positions of mail sorter and office helper, the ALJ asked the VE if her testimony was consistent

23   with the DOT and, in her response, she answered affirmatively, explaining "other than the use of a

24   cane for ambulation" which was not addressed by the DOT and based upon her professional

25   knowledge.  Defendant asserts that this meets the applicable requirements set forth by the Social

26   Security regulations and Ninth Circuit caselaw.  (Doc. 16 at 6-7).

27   ///

28   ///

1

                             *ii.  Analysis*

2

                        *1.  Mental RFC Limitations*

3    After the ALJ posed the hypothetical consistent with the final RFC, the VE provided two

4 jobs that Plaintiff could perform: officer helper (DOT 239.567-010) and mail sorter (DOT 209.687-

5 026).  The ALJ then asked the VE as follows: "And is this portion of your testimony consistent

6 with the DOT?"  The VE responded affirmatively.  (AR 115-116).  The VE then explained: "Other

7 than the use of the cane for ambulation.  Assistive devices aren't addressed by the DOT.  And,

8 again, my knowledge on that is from my private practice in job placement."  (AR 116).  A review

9 of the "mail sorter" listing confirms that it requires a Reasoning Level of three.  (DOT 209.687-

10 026).

11    An RFC limiting Plaintiff to simple work is consistent with positions requiring a Reasoning

12 Level of two.  *Davis v. Saul*, 846 F. App'x 464, 466 (9th Cir. 2021) (citing *Zavalin v. Colvin*, 778

13 F.3d 842, 846-47 (9th Cir. 2015) ("Today, we join the Tenth Circuit and hold that there is an

14 apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and

15 the demands of Level 3 Reasoning.")).  *Accord Stiffler v. O'Malley*, 102 F.4th 1102, 1108 n.1 (9th

16 Cir. 2024) (finding an apparent conflict between VE's testimony and the DOT, where the claimant

17 was limited to "simple, routine tasks" and the DOT indicated the position of mail clerk required

18 Reasoning Level 3). The ALJ did not identify this conflict between the hypothetical, the VE's

19 testimony, and the DOT and did not ask the VE to explain why Plaintiff could meet the demands

20 of Reasoning Level three for the position of mail sorter.  As such, the ALJ erred in failing to

21 reconcile this clear conflict between the VE's testimony and the DOT.  *See Zavalin*, 778 F.3d at

22 847 ("In sum, because the ALJ failed to recognize an inconsistency, she did not ask the expert to

23 explain why a person with Zavalin's limitation could nevertheless meet the demands of Level 3

24 Reasoning.  We conclude that the ALJ erred in failing to reconcile this apparent conflict.").

25    The harmfulness of the ALJ's error is contingent on whether he properly identified at least

26 one other occupation that exists in significant numbers in the national economy that Plaintiff can

27 perform, discussed further below.  *See Phillips v. Kijakazi*, No. 20-17178, 2021 WL 5506341, 2021

28 WL 5506341, at *2 (9th Cir. Nov. 24, 2021) (finding harmless error where the ALJ properly

1   identified at least one job that was consistent with Plaintiff's RFC).

2                              2.   *Physical RFC Limitations*

3       Turning to the physical limitations for the position of office helper, the VE explained that

4   the DOT did not cover assistive devices and, thus, her testimony concerning the suitability of the

5   positions was based upon her personal knowledge.  (AR 116).  The VE did not provide any further

6   explanation.

7       As set forth above, the VE "may be able to provide more specific information about jobs or

8   occupations than the DOT."  *Garcia v. Comm'r of Soc. Sec.*, No. 1:22-CV-01473-SAB, 2023 WL

9   5917996, at *10 (E.D. Cal. Sept. 11, 2023) (citing *Johnson*, 60 F.3d at 1435).  Furthermore, the

10  VE's testimony can only be fairly characterized as a conflict with the DOT when the alleged

11  conflict is "obvious or apparent."  *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016).  Tasks

12  that are not "essential, integral, or expected parts of a job are less likely to qualify as apparent

13  conflicts that the ALJ must ask about."  *Id.*; *Dewey v. Colvin*, 650 F. App'x 512, 514 (9th Cir. 2016)

14  (finding no conflict where the DOT is silent on whether there is a "sit/stand option" and where the

15  ALJ properly consulted the VE who indicated that there were jobs a claimant could perform even

16  though the claimant needed a sit/stand option and use of a cane to ambulate).

17      "The requirement for an ALJ to ask follow up questions is fact-dependent."  *Gutierrez*, 844

18  F.3d at 808.  Ordinarily, the ALJ should ask the VE to explain why there is no conflict between the

19  DOT and the applicant's RFC.  *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017).  "[T]he

20  more obscure the job, the less likely common experience will dictate the result."  *Id.*

21      In this case, Plaintiff is limited to the use of an assistive device for balance and ambulation.

22  Plaintiff can never kneel and can occasionally climb ramps and stairs, balance, stoop, crouch, and

23  crawl.  (AR 34).  Based on these aspects of the RFC, the Court finds that there is no obvious or

24  apparent conflict between Plaintiff's limitations and the occupations of office helper.  The office

25  helper role is categorized as "light work."  *See* DOT 239.567-10.  Other courts within the Ninth

26  Circuit have found no apparent conflict between a claimant's use of a cane and her ability to do

27  light work.  For example, in *Pineda v. Comm'r of Soc. Sec.*, a claimant was limited to the use of

28  custom braces and a cane for standing and walking.  No. 1:22-cv-01287-SAB, 2023 WL 5334987,

at *5 (E.D. Cal. Aug. 18, 2023).  The court found no apparent conflict between the claimant's

limitation and the DOT's description for an office helper.  *Id*. at *13 (citing DOT 239.567-010).

Here, the ALJ found as follows:

> Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.  I also note that some limitations in the residual functional capacity, such as use of an assistive device, are not directly addressed in the DOT, and am relying on the vocational expert's knowledge, training, and experience in observing and placing individuals, as well as review of relevant vocational materials.  The remainder of the vocational expert's testimony is consistent and according to the Dictionary of Occupational Titles.  I further note that, while the use of an assistive device, such as a cane, can significantly reduce the occupational base of light exertional work, this has been accounted for in the reduced job numbers available for the claimant.

(AR 39).

The ALJ acknowledged that he relied upon the VE's expertise where the DOT did not

directly address the assistive device limitation.  The ALJ noted that the Plaintiff's use of an assistive

device was considered in the analysis, namely by reduction of the available job numbers.  Such a

reduction in job numbers is appropriate when accounting for certain RFC limitations.  *See Haines*

*v. Berryhill*, No. ED CV 17-1810-DFM, 2019 WL 430498, at *2 (C.D. Cal. Feb. 4, 2019) (reducing

number of available parking lot attendant jobs to account for RFC restricting claimant to use of a

cane for any walking longer than 15 minutes at a time and no walking longer than 30 minutes at a

time).

Lastly, the ALJ must determine that a "significant" number of jobs exist "in the national

economy," which is defined as "either in the region where [the claimant] live[s] or in several regions

in the country."  20 C.F.R. § 404.1560(c).  The issue of whether the number of jobs that exist in the

national economy is "significant" is a question of fact for the ALJ.  *Gutierrez v. Comm'r of Soc.*

*Sec.*, 740 F.3d 519, 528 (9th Cir. 2014).

The ALJ's finding of 45,000 office helper jobs existing in the national economy (AR 38-

39) represents a significant number of positions.  Though the Ninth Circuit has not established a

bright line rule regarding what number of jobs may constitute a significant number, numerous other

1    courts have found jobs with far less than 45,000 positions available nationally to satisfy the

2    requirement. *See Connolly v. Colvin*, No. 1:15-CV-718-BAM, 2016 WL 8730722, at *6 (E.D. Cal.

3    Sept. 16, 2016) (collecting cases and explaining that even if 19,000 jobs nationally may be a close

4    call, it is sufficient). Thus, there was no obvious and apparent conflict between the DOT listing of

5    office helper and the Plaintiff's RFC, and the ALJ's reliance on the VE's testimony thereto is

6    supported by substantial evidence.

7        In sum, even though the ALJ erred in failing to determine that there existed a conflict

8    between the DOT listing of mail sorter and the Plaintiff's RFC, any such error was harmless as the

9    ALJ properly identified another suitable occupation that exists in the national economy at

10   significant numbers. *See Hernandez v. Berryhill*, 707 F. App'x 456, 458-59 (9th Cir. 2017) ("even

11   if the ALJ erred by failing to resolve an apparent conflict between Hernandez's RFC and the

12   vocational expert's testimony that Hernandez could perform two other jobs that require Level 3

13   reasoning, … any such error was harmless" because the ALJ properly found the claimant could

14   work in an occupation requiring level two reasoning).

15       **B.  Whether the ALJ Erred by Failing to Develop the Record As to the Impact of**

16           **Plaintiff's Bilateral Knee Arthritis**

17       Generally, "[t]he claimant has the burden of proving that she is disabled." *Smolen v. Chater*,

18   80 F.3d 1273, 1289 (9th Cir. 1996). However, "[t]he ALJ always has a 'special duty to fully and

19   fairly develop the record and to assure that the claimant's interests are considered … even when

20   the claimant is represented by counsel.'" *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003)

21   (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). Further, "[w]hen a claimant is not

22   represented by counsel, this responsibility is heightened." *Id.* This is because "Social Security

23   proceedings are inquisitorial rather than adversarial." *Schiaffino v. Saul*, 799 F. App'x 473, 476

24   (9th Cir. 2020) (quoting *Sims v. Apfel*, 530 U.S. 103, 111-12 (2000)).

25       This duty may require that the ALJ obtain additional information by, *inter alia*, contacting

26   treating physicians, scheduling consultative examinations, or calling a medical expert. 20 C.F.R.

27   §§ 416.912(e)-(f), 416.919a. The ALJ "has broad latitude in ordering a consultative examination.

28   The government is not required to bear the expense of an examination for every claimant. Some

1    kinds of cases, however, do normally require a consultative examination, including those in which

2    additional evidence needed is not contained in the records of [the claimant's] medical sources, and

3    those involving an ambiguity or insufficiency in the evidence [that] must be resolved." *Reed v.*

4    *Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) (citations and quotations omitted).

5         Nevertheless, "[a]n ALJ's duty to develop the record further is triggered only when there is

6    ambiguous evidence or when the record is inadequate to allow for proper evaluation of the

7    evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Bayliss*, 427 F.3d at 1217

8    (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)); *see Brown v. Berryhill*, 697 F. App'x 548, 549 (9th

9    Cir. 2017) ("Because the record evidence was not ambiguous and the record was sufficient to allow

10    for proper evaluation of the evidence, the ALJ was not required to re-contact Brown's doctors or

11    further develop the record.").

12         Because it is the claimant's burden to present evidence of disability, the mere absence of an

13    opinion from a treating or examining physician does not give rise to a duty to develop the record.

14    *Kaur v. Kijakazi*, No. 1:22-cv-0697 JLT CDB, 2023 WL 6241821, at *2 (E.D. Cal. Sept. 26, 2023);

15    *see Harrison v. Saul*, No. 1:19-cv-01683-BAM, 2021 WL 1173024, at *5 (E.D. Cal. Mar. 29, 2021).

16                  ***i.   Parties' Arguments***

17         Plaintiff argues the ALJ had a duty to develop the record for a variety of reasons.  First,

18    Plaintiff asserts that she underwent no independent consultative examination and, thus, "no

19    examining physician rendered an opinion regarding her functional limitations."  (Doc. 15 at 11).

20    Plaintiff also notes that the "non-examining doctors reviewed medical evidence" that ended July

21    2019, over a year before the issuance of the ALJ's decision and thus did not "have the opportunity

22    to opine on the progression of Plaintiff's condition." *Id.*  In particular, Plaintiff provides that neither

23    physician was aware that she suffered from arthritis in both knees, due to the later completion of

24    the x-ray of the left knee on October 2, 2019. *Id.* (citing AR 933).  She argues that neither physician

25    accounted for the exam conducted by physician Kenny Thanh Mai "wherein replacement surgery

26    was recommended." *Id.* (citing AR 629).

27         Next, Plaintiff asserts that the ALJ "mischaracterized the nature and severity of Plaintiff's

28    right knee condition" by failing to cite the results of an MRI which provided greater detail of the

1    condition of the right knee. *Id.* (citing AR 35, 631). Plaintiff provides that Dr. Mai "opined that

2    the MRI showed that Plaintiff suffered from moderate, not mild, osteoarthritis." *Id.* at 11-12 (citing

3    AR 629).

4          Defendant asserts that the "evidence was neither ambiguous nor insufficient to make a

5    determination, nor did the ALJ make any such finding." (Doc. 16 at 8; citing *Smolen*, 80 F.3d at

6    1288). Defendant provides that the record was complete, spanning as far back as 2015, and

7    contained assessments from state agency experts and an opinion from Plaintiff's treating provider.

8    *Id.* (citing AR 156-158, 172-174, and 790-792). Defendant states that Plaintiff proffers no

9    argument that later evidence "proved she was unable to work or unable to perform any work," as

10   the October 2019 x-ray showed only mild degenerative changes in both knees and examinations in

11   2020 showed a normal gait and ability to walk on heels and tees, along with normal findings

12   regarding sensation and tenderness to palpitation of either knee. *Id.* (citing AR 34, 912-913, 933,

13   937). Defendant cites caselaw for the proposition that there is always some time lapse between a

14   consultant's report and the ALJ's hearing and decision and the regulations impose no limit on how

15   much time may pass. *Id.* at 8-9.

16         Defendant further argues that the more recent records are consistent with the assessments

17   from Dr. Nasrabadi and Dr. Jackson. *Id.* at 9. Defendant asserts that, contrary to Plaintiff's

18   contention that the ALJ mischaracterized the severity of her right knee condition, the ALJ found

19   that she had degenerative joint disease in both knees and concluded the evidence "only showed

20   mild degenerative changes in both knees," and Dr. Mai noted that Plaintiff has "routine moderate

21   osteoarthritis" in the right knee. *Id.* at 9-10 (citing AR 31, 629, 680, 933). Defendant further asserts

22   that Plaintiff mischaracterizes the evidence from Dr. Mai, which does not support the notion that

23   "Plaintiff was actually advised that she required a right knee replacement or that her condition was

24   so debilitating that she underwent that procedure." *Id.* at 10 (citing AR 629). Lastly, Defendant

25   states that Plaintiff fails to show how her right knee condition would preclude all work and that the

26   issues of missing evidence or an incomplete record were waived when Plaintiff's counsel failed to

27   challenge them at the hearing. *Id.* (citing AR 84-85, 944-948).

28   ///

1                               *ii. Analysis*

2         As a preliminary matter, Plaintiff's counsel was afforded an opportunity during the hearing

3 before the ALJ to object if the record was not complete. (AR 84). Plaintiff's counsel represented

4 at the hearing that he believed the record was complete, excepting records from one medical

5 provider, In Home Support Services, with the ALJ providing 15 days for receipt of said records.

6 (AR 85). Such a representation would ordinarily result in waiver of the issue of an incomplete

7 record. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (discussing the requirement

8 to raise issues during the hearing in order to preserve them for appeal and explaining that "[w]e

9 held in light of the fundamental principle that an agency, its experts, and its administrative law

10 judges are better positioned to weigh conflicting evidence than a reviewing court") (citing *Meanel*

11 *v. Apfel*, 172 F.3d 1111 (9th Cir. 1999), *as amended* (June 22, 1999)).

12         However, "[d]istrict courts within the Ninth Circuit have found an erroneous failure to

13 develop the record … where there is an obvious gap in the record, even if the claimant is represented

14 by counsel who states that the record does not need to be supplemented further." *Caratachea v.*

15 *Comm'r of Soc. Sec.*, No. 1:21-cv-00804-DAD-BAM, 2025 WL 1548682, at *3 (E.D. Cal. May

16 30, 2025) (collecting cases). For the reasons set forth below, the transcript before the Court does

17 not present any obvious gap in the record.

18         On December 11, 2018, physician Haroutun Abrahamian provided an impression of

19 Plaintiff's knees from an MRI exam, noting "[t]ricompartmental chondromalacia," "patellar

20 maltracking disorder," "Hoffa's fat pad edema," "small joint effusion," and "small popliteal cyst."

21 (AR 631, 680). Plaintiff asserts that the ALJ mischaracterized the nature of Plaintiff's knee

22 condition by failing to cite Dr. Abrahamian's diagnosis. As to both claims, Plaintiff is incorrect.

23 First, the ALJ, in fact, cited to Dr. Abrahamian's findings when noting Plaintiff had "mild

24 degenerative changes in both knees." (AR 35; citing AR 680). Regardless, under the

25 circumstances, the ALJ was not required to cite to any specific record. *See Howard ex rel. Wolff*

26 *v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

27         Second, on March 18, 2019, state agency consultant Dr. Nasrabadi referred to Plaintiff's

28 knee condition as "osteoarthritis," after noting the MRI showed "tricompartmental

1    chondromalacia," "[p]atella alta," "Hoffa's fat pad edema," "small joint effusion," and "small

2    popliteal cyst." (AR 157-158). On August 2, 2019, state agency consultant Dr. Jackson noted the

3    same results from the MRI and again referred to Plaintiff's knee condition as "osteoarthritis,"

4    noting "new and material impairment of [r]ight knee OA with degenerative changes." (AR 174).

5         Additional records subsequent to December 11, 2018, evidence other healthcare

6    practitioners referring to Plaintiff's knee condition by similar terms, such as "osteoarthritis" or

7    "degenerative changes." (AR 629, 933). As such, the ALJ's failure to use the precise language in

8    Dr. Abrahamian's records regarding Plaintiff's knee condition does not establish a

9    mischaracterization of Plaintiff's diagnosis. Other practitioners used differing, or less specific,

10   terms to sufficiently capture Plaintiff's diagnosis. The ALJ referred to Plaintiff's knee condition

11   as "degenerative joint disease (DJD) of the bilateral knees," with imaging showing "mild

12   degenerative changes." (AR 31, 35; citations omitted). Osteoarthritis is a degenerative joint

13   disease.[3] The ALJ was not obligated to use a certain highly specific term or repeat a physician's

14   full impression to properly characterize the record within the context of the decision. *See Sanchez*

15   *v. Comm'r of Soc. Sec.*, No. 1:22-cv-00091-SAB, 2023 WL 2354750, at *15 (E.D. Cal. Mar. 3,

16   2023) ("It therefore falls squarely within the ALJ's province to synthesize the medical evidence,

17   resolve conflicts and ambiguities in the medical testimony, and determine credibility. Hence, the

18   ALJ's RFC determination need not precisely reflect any particular medical provider's assessment.")

19   (citations and quotations omitted).

20        On January 31, 2019, Dr. Mai noted Plaintiff's chief complaint was "chronic right knee pain

21   for months; no recent trauma." (AR 627). Dr. Mai stated that the "xrays [sic] and MRI of right

22   knee confirmed routine moderate osteoarthritis." (AR 629). Dr. Mai states that treatment options

23   were discussed, including "NSAIDS vs injections vs total knee replacement." Dr. Mai concluded

24   that Plaintiff was "advised to get sugar under control, then return for injection if she chooses." (AR

25   629). From Dr. Mai's language, it is clear that the records do not support Plaintiff's contention that

26   "replacement surgery was recommended." (Doc. 15 at 11). Instead, Dr. Mai's records suggest that

27

28        [3] National Institute of Arthritis and Musculoskeletal and Skin Diseases, "Osteoarthritis,"
          https://www.niams.nih.gov/health-topics/osteoarthritis (last visited July 18, 2025).

1    Plaintiff was presented multiple different options for treatment and the option for injections was

2    the one prioritized, with Plaintiff to choose whether she wished to proceed.

3        There is no indication that knee replacement surgery was recommended but, rather, the

4    record reflects that Dr. Mai identified it only as an option during a discussion concerning possible

5    treatments.  As such, the ALJ did not mischaracterize Dr. Mai's findings.  In any event, the Social

6    Security regulations impose no limit on gaps in time between a consultant's report and the ALJ

7    hearing and decision.  Thus, the ALJ is not required to obtain an additional physician opinion to

8    review evidence unexamined by the state agency consultants, particularly where the record is

9    unambiguous.  "If the mere passage of time and presence of additional medical evidence in the

10   record established ambiguity, then a consultative examination or updated medical opinion would

11   be required in every single Social Security case."  *Sanchez*, 2023 WL 2354750, at *14 (explaining

12   that "there is always a gap in time between a non-examining State agency physician's review …

13   and the ALJ's subsequent hearing decision, and claimants routinely continue pursuing care …

14   generating new medical records") (citations and quotations omitted); *see Owen v. Saul*, 808 Fed.

15   App'x 421, 423 (9th Cir. 2020).

16       Further, record evidence subsequent to Dr. Mai's findings reflects Plaintiff's knee condition

17   consisted of mild degenerative changes.  For example, on October 2, 2019, physician Athale

18   Sanjeev conducted an x-ray exam and found both of Plaintiff's knees had "[m]ild degenerative

19   changes … with slightly reduced joint space seen laterally.  No irregularity seen in the articular

20   margins. Sclerosis seen in the medial as well as in the lateral tibial plateau."  (AR 933, 937).

21   Plaintiff asserts that neither state consultant was aware that she suffered from arthritis in both knees,

22   "as the left knee was not x-rayed" until October 2, 2019.  (Doc. 15 at 11).  However, the ALJ cited

23   Dr. Sanjeev's findings of "mild degenerative changes" when determining that Plaintiff had "mild

24   degenerative changes in both knees," thus acknowledging Plaintiff's impairments in both knees.

25   (AR 35; citing AR 933).  The ALJ did not limit the finding to the right knee only.  As noted above,

26   it is for the ALJ to synthesize the medical evidence and resolve conflicts.  The record provides

27   ample support for the ALJ's conclusion of "mild degenerative changes"; as such, the ALJ was not

28   required to adopt Dr. Mai's interpretation of the x-ray and MRI results.  *See Sanchez*, 2023 WL

1   2354750, at *15.

2       Here, the record presents no clear gaps, nor ambiguous evidence, nor any inadequacy for

3   allowing proper evaluation of the evidence and, therefore, did not trigger the ALJ's duty to develop

4   the record. *Massanari*, 276 F.3d at 459-60.  As such, the ALJ had broad latitude in deciding

5   whether to order a consultative examination and was under no duty to do so.

6       **C. Whether the ALJ Erred by Failing to Properly Support the RFC with Medical**

7           **Evidence**

8       A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations."

9   20 C.F.R. § 404.1545(a); *id.* § 416.945(a).  The RFC assessment is an administrative finding based

10  on all relevant evidence in the record, not just medical evidence. *Bayliss*, 427 F.3d at 1217.

11      In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that

12  are credible and supported by substantial evidence in the record. *Id.*  However, an ALJ's RFC

13  findings need only be consistent with relevant assessed limitations and not identical to them. *See*

14  *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) ("Although the ALJ rejected

15  any implication in Dr. Koogler's evaluation that Turner was disabled, he did incorporate Dr.

16  Koogler's observations into his residual functional capacity determination ... These limitations

17  were entirely consistent with Dr. Koogler's limitation.").  Ultimately, a claimant's RFC is a matter

18  for the ALJ to determine. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

19      Any RFC that fails to include all of a claimant's credible limitations and any subsequent

20  opinion of a vocational expert are "incomplete." *See Bagby v. Comm'r Soc. Sec.*, 606 F. App'x

21  888, 890 (9th Cir. 2015).  An ALJ need not use the same language as the medical opinion setting

22  forth the limitations, as long as the RFC sufficiently accounts for the limitations. *See Stubbs-*

23  *Danielson v. Astrue*, 539 F.3d 1169, 1173-1174 (9th Cir. 2008).

24                  ***i. Parties' Arguments***

25      Plaintiff asserts that the ALJ failed to "specifically address any limitations on standing and

26  walking, despite finding that Plaintiff suffered from severe impairments of arthritis in both knees

27  and obesity." (Doc. 15 at 13; citing AR 31 and SSR 19-2p).  Plaintiff repeats her argument that the

28  ALJ "mischaracterized the severity of the right knee arthritis, calling it mild, instead of moderate,

1    and failing to cite at all the findings of the MRI results." Plaintiff asserts that the ALJ failed to

2    explain additional limitations resulting from obesity on her ability to stand and walk for the majority

3    of the workday. *Id.* (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015)). Plaintiff

4    states that such an error is not harmless as she was "closely approaching advanced age" under the

5    Social Security regulations and possessed a high school education and, thus, if found unable to

6    perform the standing and walking demands of light work, "GRID Rule 201.04 directs a finding of

7    disability." *Id.* (citing AR 92, 114, 164).

8        Defendant asserts that the ALJ "fulfilled his duty to evaluate the medical opinions of record"

9    by properly discounting the opinions of physician Evelyn Gomez-Zelada with citations to record

10   evidence. (Doc. 16 at 12; citing AR 36-37, 647, 679-680, 741, 744, 912-913, 925-926, 930-931,

11   933). Defendant argues that Plaintiff waived this issue by failing to raise it. *Id.* (citing *Copeland*

12   *v. Bowen*, 861 F.2d 536, 540-41 (9th Cir. 1988)). Defendant provides that the ALJ properly found

13   the findings of state agency consultants Dr. Nasrabadi and Dr. Jackson to be consistent and

14   supported by the record, with both finding Plaintiff was capable of light work with additional

15   limitations. *Id.* Defendant asserts that the ALJ properly summarized the relevant evidence and

16   incorporated numerous limitations into the RFC. *Id.* at 13.

17            ***ii.   Analysis***

18       As explained *supra* in subsection (B), the ALJ did not mischaracterize the severity of

19   Plaintiff's right knee condition by refraining from using the language in Dr. Mai's records, nor did

20   the ALJ fail to cite the findings of the MRI results. (AR 35; citing AR 680).

21       The RFC assessed by the ALJ is as follows:

22          After careful consideration of the entire record, I find that the
            claimant has the residual functional capacity to perform light work
23          as defined in 20 CFR 416.967(b) except the claimant requires the
            use of an assistive device for balance and ambulation; can never
24          kneel, or climb ladders, ropes, and scaffolds; can occasionally climb
            ramps and stairs, balance, stoop, crouch, and crawl; can never work
25          at unprotected heights, or in fumes, odors, dusts, gases, or poor
            ventilation; can learn and retain simple instructions; can implement
26          simple instructions on a consistent basis; can occasionally interact
            with the public; and can tolerate occasional changes in the
27          workplace.

28

1    (AR 34) (emphasis omitted).  The ALJ discussed the impairments of Plaintiff's knees, citing

2    properly to the record for his findings that Plaintiff treated the impairments with conservative means

3    and declined more aggressive treatment and frequently displayed a normal gait, ability to walk on

4    heels and toes, range of motion of her knees, knee tenderness, negative straight leg raise, and lower

5    extremity strength and sensation.  (AR 35; citing AR 647, 680, 741, 744, 912-913, 925-926, 930-

6    931, 933).  Regarding obesity, the ALJ found that it "contributes to the claimant's exertional and

7    postural limitations, as well as her limitations on use of an assistive device and work at unprotected

8    heights, as outlined in the residual functional capacity above."  (AR 35-36).

9         Plaintiff does not challenge the ALJ's findings regarding the opinions of Dr. Gomez-Zelada.

10   As such, the Court cannot manufacture arguments for Plaintiff and any objections to the ALJ's

11   findings regarding the opinion of Dr. Gomez-Zelada are waived.  *See Gish v. Colvin*, No. 6:14-cv-

12   01938-SI, 2016 WL 814816, at *4 n.2 (D. Or. Feb. 29, 2016) ("because Ms. Gish did not provide

13   any objection to the ALJ's finding [that physician's opinion was internally inconsistent], any such

14   argument is waived."); *see also Montoya v. Kijakazi*, No. 1:20-cv-0152 JLT, 2021 WL 5356470,

15   at *3 (E.D. Cal. Nov. 17, 2021) ("The Ninth Circuit indicated courts cannot manufacture arguments

16   for an appellant.  Rather, the Court will review only issues [which] are argued specifically and

17   distinctly.  Therefore, when a claim of error is not argued and explained, the argument is waived.")

18   (quotations omitted; citing *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th

19   Cir. 2003)).  Nonetheless, the ALJ supported his findings discounting the opinion of Dr. Gomez-

20   Zelada with substantial evidence, with relevant citations to the record and concluded the opinion

21   lacked supportability and consistency therefrom.  (AR 37).

22        Thus, the ALJ sufficiently supported the RFC with reference to the medical record.  *See*

23   *Compton v. Colvin*, No. 2:11-CV-1824 EFB, 2013 WL 1326034, at *4 (E.D. Cal. Mar. 29, 2013)

24   ("However, the ALJ also found that plaintiff's obesity exacerbates the pain in his back and knee.

25   This clearly shows that the ALJ also considered the impact of plaintiff's obesity in conjunction

26   with plaintiff's other impairments, including degenerative disk disease and osteoarthritis in his right

27   knee.").

28        Insofar as Plaintiff advances another rational interpretation of the record, "[w]here evidence

20

1  is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn*

2  *v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

3                          *      *      *      *      *

4         In sum, the ALJ's error in failing to reconcile conflict between the VE's testimony and the

5  DOT was harmless as to the mail sorter occupation, the ALJ's duty to develop the record was not

6  triggered as to Plaintiff's bilateral knee osteoarthritis, and the ALJ properly supported the RFC with

7  medical evidence.

8  **IV.    CONCLUSION**

9         Accordingly, IT IS HEREBY ORDERED that:

10     1.     Plaintiff's motion for summary judgment (Doc. 15) is DENIED;

11     2.     The ALJ's decision is affirmed; and

12     3.     The Clerk of the Court shall enter judgment in favor of Defendant, terminate any

13            deadlines, and close this case.

14  IT IS SO ORDERED.

15  Dated:   __**July 31, 2025**__

16                                        UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

                                      21